**No. 25-2472**

# United States Court Of Appeals
# For Eighth Circuit

---

Jennifer Audette and Robert Audette,

Plaintiffs-Appellants,

v.

Lake of the Woods County; Lake of the Woods Board of County Commissioners; James Nordlof, in his official capacity as a Board member; Cody Hasbargen, in his official capacity as a Board member; Joe Grund, in his official capacity as a Board member; Jon Waibel, in his official capacity as a Board member; and Edward Arneson, in his official capacity as a Board member,

Defendants-Appellees.

---

On Appeal from the United States District Court
For the District of Minnesota
District Court No. 0:24-cv-00944-LMP-LIB

---

**APPELLANTS' PETITION FOR REHEARING EN BANC**

---

Gregory M. Erickson, 276522
Maxwell D. Becker, 0505693
Mohrman, Kaardal & Erickson, P.A.
150 South 5th Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: (612) 341-1074
Email: erickson@mklaw.com
Email: becker@mklaw.com
*Attorneys for Appellants*

Paul Donald Reuvers, 0217700
Andrew A. Wolf, 0398589
Iverson Reuvers
9321 Ensign Avenue South
Bloomington, MN 55438
Telephone: (952) 548-7200
Email: paul@iversonlaw.com
Email: andrew@iversonlaw.com
*Attorneys for Appellees*

August 7, 2026

## Table of Contents


Table of Authorities .......... ii

PETITION FOR REHEARING EN BANC .......... 1

STATEMENT OF THE CASE .......... 3

REASONS FOR GRANTING REHEARING EN BANC .......... 5

I. Three Necessary Principles Bear on the Propriety of Both Circuit Splits, and the Justification for Rehearing En Banc. .......... 5

a. An After-the-Fact Application is Part of the Established Procedures for Adjusting the Zoning Code .......... 6

b. In the Presence of any Ambiguity or Silence, the Ordinance is Construed Strictly in Favor of the Landowner, and Against the County .......... 7

c. The County's Own Understanding of the Ordinance Included an After-the-Fact Conditional Use Application Process .......... 8

II. The "Too Little Too Late" Split .......... 8

a. The "Too Little, Too Late" Rule Breaks with Established Eighth Circuit Precedent .......... 10

b. The "Too Little, Too Late" Rule's Imposition in the Eighth Circuit Makes the Eighth Circuit an Outlier Nationally .......... 12

III. The Decision Breaks with Eighth Circuit Precedent and is Inconsistent with Circuit Caselaw Regarding the Definition of "Meaningful Access" in the Title II Context .......... 14

CONCLUSION .......... 16

CERTIFICATE OF COMPLIANCE .......... 17

Use of AI Technology Certification .......... 18

CERTIFICATE OF SERVICE .......... 19

## Table of Authorities

Page(s)

### Cases

*Alexander v. Choate*,
469 U.S. 287 (1985) .......... 15

*Allentown Victory Church v. City of Allentown, Pennsylvania*,
No. 22-2817, 2024 WL 3439772 (3d Cir. July 17, 2024) .......... 13

*Anderson v. City of Blue Ash*,
798 F.3d 338 (6th Cir. 2015) .......... 13

*Audette v. Lake of the Woods Cnty.*,
No. 24-CV-944 (LMP/LIB), 2025 WL 1736932 (D. Minn. June 23, 2025) ...8, 11, 12

*Audette v. Lake of the Woods Cnty.*,
No. 25-2472, 2026 WL 2131753 (8th Cir. July 24, 2026) .......... 1

*Courage to Change Ranches Holding Co. v. El Paso Cnty., Colorado*,
73 F.4th 1175 (10th Cir. 2023) .......... 13

*Developmental Servs. of Nebraska v. City of Lincoln*,
No. 4:04CV3272, 2005 WL 8176082 (D. Neb. Apr. 22, 2005) .......... 9

*Frank's Nursery Sales, Inc. v. City of Roseville*,
295 N.W.2d 604 (Minn. 1980) .......... 7

*Hall v. Higgins*,
77 F.4th 1171 (8th Cir. 2023) .......... 14

*Ohio House, LLC v. City of Costa Mesa*,
135 F.4th 645 (9th Cir. 2025) .......... 13

*Oxford House, Inc. v. City of Wilmington*, N.C.,
No. 7:07-CV-61-F, 2010 WL 4484523 (E.D.N.C. Oct. 28, 2010) .......... 10

*Oxford House-A v. City of University City,*
87 F.3d 1022 (8th Cir. 1996) .......... 10, 11

*Oxford House-C v. City of St. Louis*,
77 F.3d 249 (8th Cir. 1996) ....................................................................10, 11, 14

*Randolph v. Rodgers*,
170 F.3d 850 (8th Cir. 1999) ........................................................................... 14

*Sailboat Bend Sober Living, LLC v. City of Fort Lauderdale, Fla.*,
46 F.4th 1268 (11th Cir. 2022)........................................................................ 14

*Summers v. City of Fitchburg*,
940 F.3d 133, (1st Cir. 2019)........................................................................... 12

*Tsombanidis v. W. Haven Fire Dep't*,
352 F.3d 565 (2d Cir. 2003) ........................................................................... 12

*United States v. Vill. of Palatine, Ill.*,
37 F.3d 1230 (7th Cir. 1994) ........................................................................... 13

**Rules**

Federal Rule of Appellate Procedure Rule 40...........................................................1, 2, 5

**Other Authorities**

3 Rathkopf, The Law of Zoning and Planning ch. 65, s 9.03 (4th ed. 1979)................. 7

3 Anderson, American Law of Zoning s 16.02 (2d ed. 1977).......................................... 7

## PETITION FOR REHEARING EN BANC

### Introduction and Federal Rule of Appellate Procedure Rule 40 Statement

Petitioners Robert and Jennifer Audette petition for rehearing en banc the panel's decision regarding the forfeiture of ADA protections afforded to disabled landowners under the Americans with Disabilities Act. After identifying a violation of local, county Ordinances, the Lake of the Woods County invited the Audettes to apply for an Ordinance-allowed after-the-fact conditional use permit at the County's invitation. The County denied the application, issued an order demanding removal of the Audettes' ramp—their proposed accommodation—and offered nothing in return.

The appellate Court affirmed the district court's decision, finding that because the Audettes violated the ordinance, they lost the right present ADA claims to the County on the newly created principle of "too little, too late."

En banc rehearing of these issues is especially warranted because the rule's imposition asks more questions than it answers. The panel agreed with Petitioners—"[t]he Audettes are correct that '[a] disabled landowner does not forfeit their right to ADA accommodations the moment the landowner violates a zoning ordinance[.]'" *Audette v. Lake of the Woods Cnty.*, No. 25-2472, 2026 WL 2131753, at *7 (8th Cir. July 24, 2026). But the decision concludes otherwise. Accordingly, the court is left with a question of exceptional importance; the Court should determine, en banc, that if a disabled landowner does not forfeit their right to ADA accommodations when they are noticed of their violation, then when in the process does the ADA cease to apply?

Previously, this Court had never applied the "too little, too late" rule in the context of Title II of the ADA. The panel's recent decision deviates from other circuits, who have also refused to apply the rule, making the Eighth Circuit an outlier among other federal circuits, each warranting rehearing under Rule 40(2)(A)-(D).

The first split, or the "too little, too late" split, concerns a scheme thrust into the Title II context for the first time in any jurisdiction by the court below—a scheme the panel did not mention by the name given to it by the district court: "too little, too late." That rule's imposition breaks with prior Eighth Circuit precedent, and makes the Eighth Circuit the only circuit court in the nation to affirmatively hold a disabled party, alleged to be in violation of a local Ordinance, is not afforded ADA protections.

The appellate panel, endorsing the district court's decision, created an inconsistency with other federal circuits, and indeed, the Supreme Court, regarding accommodations written into and required by the Ordinance, but ignored by the land use authority and unoffered to the disabled party. The district court's decision is the first time a public entity refused to provide meaningful access to the accommodations mandated in its Ordinance, and avoided liability simply because the Ordinance, on paper, included those unoffered accommodations.

The district court's decision that the mere presence of an unoffered, latent accommodation affords a disabled party "meaningful access" to that accommodation conflicts with prior decisions of this Circuit, the Supreme Court, and other federal

circuits, and involves a question of exceptional importance: May a municipality refuse to offer a disabled person its Ordinance contemplated minimum accommodations, denying the disabled person meaningful access, and yet avoid liability? This question is worthy of a rehearing en banc.

The appellate panel's reliance on, and expansion of, the "too little, too late" rule, and the application of a new definition of "Meaningful Access" under the ADA as applied to real property and zoning decisions in processes provided by the government are so important, and have such definitive impact on property owners that the panel's decision should be considered.

## STATEMENT OF THE CASE

Robert and Jennifer Audette own a home in Lake of the Woods County, Minnesota. Jennifer Audette suffers from Multiple Sclerosis ("MS"), a degenerative, neurological disease that worsens over time. MS is ultimately fatal. Robert built a 12-foot ramp to accommodate Jennifer's disability, allowing her to walk from their home to the lakeshore.

The County informed the Audettes that the ramp did not comply with certain County regulations. See App.314, R.Doc.28-8, at 2. The County wanted the ramp removed. But, in the alternative, the County invited the Audettes to engage in the government's described "after-the-fact permit" application process, as allowed by the Lake of the Woods County Zoning Ordinance" §1110. See LOTW County Zoning Ordinance § 1110, and App.310, R.Doc. 29-6 at 4; and App.443, R.Doc. 28-19, at 2.

The Audettes engaged in the after-the-fact process knowing that they would face a fee five (5) times greater than that of normal, prospective conditional use permit applicants. App.315 R.Doc. 29-8, at 3. The County chose to consider the Audettes application, a refusal of which would have ended the after-the-fact process before it even began. App.344, R.Doc. 28-13, at 1:1-14; *Id.* at 2:13-14; *Id.* at 345, at 2:22.

The Audettes participated in the government's after-the-fact permit process under the County Ordinances. Notably, the Planning Commission voted to recommend approval of application with conditions prior to the Board's Consideration. App.386, R.Doc. 28-15 at 3.

The County Board then considered both the Audettes' application, and the Planning Commission's recommendation for approval. App.389, R.Doc. 28, at 16; see also, generally *Id.* at 390-428. Interestingly, the Audettes were neither informed of, nor invited to the Board's open meeting. App.254, R.Doc. 27-8, at 15:14-15. Board members testified that they knew—through the applications and other governmental officials, that Jennifer suffered from MS, before the meeting began. App.225, R.Doc. 27-7, at 5 at 12:24-25; App.189, R.Doc. 27-6, at 9, at 31:4-13; App.390, R.Doc. 28-16, at 3, at 1:17-18. The Board failed to consider Jennifer's disability in its findings, and issued a resolution stating that the Audettes' "after-the-fact Conditional Use Permit, as allowed by the Lake of the Woods County Zoning Ordinance" was denied, and demanded removal. App.443, R.Doc. 28-19, at 2. The Board provided no alternative to reasonably accommodate Jennifer's disability.

## REASONS FOR GRANTING REHEARING EN BANC

The district court's decision, affirmed by the panel, breaks with this Court's precedent, and creates inconsistency between federal circuits previously unified on two issues, each meriting consideration. Fed. R. APP. P. 40(2)(C) and (D). In this Court, the rule is now this: If a disabled landowner was in violation of a land use Ordinance and sought accommodation through the established procedures established in that Ordinance, the landowner's efforts came "too little, too late", and the disabled landowner is not afforded ADA protections. Further, if an Ordinance includes a contemplated accommodation, government officials are immune from liability when they refuse or fail to actually offer an accommodation because their written Ordinance offered it for them.

### I. Three Necessary Principles Bear on the Propriety of Both Circuit Splits, and the Justification for Rehearing En Banc.

There are three principles which address a government's after-the-fact permitting process when dealing with identified zoning code violations. This is also commonly referred to as "adjusting the zoning code." These principles will aid the Court in determining the proper course during a rehearing en banc.

First—the plain language of the ordinance states that the after the fact permit process is a process in which a landowner is entitled to engage. For example, the County's Ordinance provides an entitlement to a real property owner to engage in an after the fact permit process. See § 1110. Second, the necessary consideration of

Minnesota's *Frank's Nursery* rule, unconsidered by the district court, mandates a reading of the ordinance in favor of the disabled landowner, not the County. *Frank's Nursery* mandates that any "silence" or ambiguity concerning available processes latent within the Ordinance must be resolved to afford the landowner access to that process. Third, the County's own behavior reflects an understanding that the after-the-fact conditional use permit application process existed for landowners already in violation. This is why the County invited the Audettes to utilize the after-the-fact process in the first place, why the County charged an elevated fee to participate in the process, and why the County considered the application on its merits—merits which referenced Jennifer's disability.

**a. An After-the-Fact Application is Part of the Established Procedures for Adjusting the Zoning Code**

Prior to an effective rehearing, a review of that Ordinance section is warranted. Section §1110 reads: "Any application for a permit which is made after the work is commenced and which requires a permit shall be charged an after-the-fact administrative fee, as established by resolution of the Lake of the Woods County Board of Commissioners." If work is commenced on a project that "requires a permit" and a permit is not acquired, that project by definition is *not permitted*, and thereby "in violation" of the Ordinance. Under these circumstances, the government's after-the-fact permit process exists for those projects "already in violation" by the plain language of the Ordinance.

### b. In the Presence of any Ambiguity or Silence, the Ordinance is Construed Strictly in Favor of the Landowner, and Against the County

That the Audettes properly raised their ADA concerns during the after-the-fact conditional use permit process is reinforced by Minnesota's own caselaw—specifically the *Frank's Nursery* rule. *Frank's Nursery* establishes that for nearly 50 years in Minnesota, "an ordinance should be construed strictly against the city and in favor of the property owner." *Frank's Nursery Sales, Inc. v. City of Roseville*, 295 N.W.2d 604, 608–09 (Minn. 1980) citing 3 Anderson, American Law of Zoning s 16.02 (2d ed. 1977); 3 Rathkopf, The Law of Zoning and Planning ch. 65, s 9.03 (4th ed. 1979). Courts in Minnesota "must give weight to the interpretation that, while still within the confines of the term, is least restrictive upon the rights of the property owner to use his land as he wishes." *Id.* In this instance, the *Frank's Nursery* rule means that to the extent the "Ordinance is silent as to whether the after-the-fact permit exists as of right for projects already in violation" the Court must interpret the Ordinance in favor of the landowner.

Application of the *Frank's Nursery* rule presents one conclusion. Once the government invited the Audettes to engage in the after-the-fact process, the government was obligated to engage in the after-the-fact process itself, which mandates consideration of Jennifer's disability. The Audettes request for accommodation should have been judged on its merits, under the standard, uniform,

historical rule—was the request "reasonable," and was it "necessary" to ameliorate Jennifer's disability.

### c. The County's Own Understanding of the Ordinance Included an After-the-Fact Conditional Use Application Process

Finally, although the panel suggested that the Ordinance did not exist, the County's own actions showed the opposite. The County relied upon § 1110 to provide the Audettes an after-the-fact conditional use permit application and process, representing to the Audettes that the County itself believed the after-the-fact conditional use process was part of the County's established procedures for adjusting the code. The County, albeit failing to meet its obligations under the ADA, made a decision. The County denied the Audettes' after-the-fact permit request for a conditional use permit. Hence, the process existed.

Having addressed these principals, Petitioners address the two splits caused by the district court's decision.

## II. The "Too Little Too Late" Split

The first of the circuit splits arises out of the district court's imposition of the "too little, too late" rule, in the context of Title II of the ADA, for the first time in American jurisprudence. The "too little, too late" rule is as follows: "When a person's request for an accommodation comes only after disciplinary action is imminent, such a request is 'too little, too late.'" *Audette v. Lake of the Woods Cnty.*, No. 24-CV-944 (LMP/LIB), 2025 WL 1736932, at *10 (D. Minn. June 23, 2025), aff'd, No. 25-2472,

2026 WL 2131753 (8th Cir. July 24, 2026) (District court recognizing that "It does not appear that the Eighth Circuit has applied the 'too little, too late' rule in the Title II context.") The essence of the panel's decision is an adoption of the "too little, too late" rule by its affirmation of the district court's opinion.[1] Yet, the appellate court opined that "[t]he Audettes are correct that '[a] disabled landowner does not forfeit their right to ADA accommodations the moment the landowner violates a zoning ordinance[.]'" *Audette*, at 12-13, quoting Appellant's Br. At 22. En banc review is thus warranted not only to reconcile apparent inconsistencies within the decision and the divergence from current federal circuit decisions, including other decisions in the Eighth Circuit. Moreover, if a disabled landowner does *not* forfeit their right to ADA accommodations when they are noticed of their violation, the decision should have determined when in the government provided process the ADA ceases to apply.[2] Under the panel's decision, this remains wholly unclear.

---

[1] The "too little, too late" rule was referenced by name four times in the district court's opinion.

[2] It is worth reiterating—if the County Ordinance did not have an after-the-fact conditional use permit application process, the Audettes would have no recourse. But because the government established an after-the-fact process, the Audettes were entitled to have the County consider Jennifer's ADA concerns. See *Developmental Servs. of Nebraska v. City of Lincoln*, No. 4:04CV3272, 2005 WL 8176082, at *7 (D. Neb. Apr. 22, 2005) (Describing that a party seeking accommodation must use, and be entitled to use, the given procedure for adjusting the zoning code. "The principal difference between *Oxford House-C* and the present case, obviously, is that the City of Lincoln does not have any "established procedures for adjusting the zoning code.")

### a. The "Too Little, Too Late" Rule Breaks with Established Eighth Circuit Precedent

The rule's imposition makes this decision an outlier among existing Eighth Circuit precedent, and fundamentally reconstructs the intersection between ADA and land use law. Eighth Circuit caselaw mirrors *Oxford House-C v. City of St. Louis*, 77 F.3d 249, 251 (8th Cir. 1996), a far-reaching, well accepted principle of law throughout the country, including by the United States Supreme Court. In that case, the Plaintiffs, acting on behalf of the disabled residents, intentionally refused to seek the requisite permits thus to violating the ordinance. The Oxford House raised the ADA after it was cited for a violation. This was a deliberate strategy, but it did not invoke the imposition of the "too little, too late" rule. [3] "[A]fter city inspections revealed that more than eight recovering men were living at each Oxford House, the City cited the houses for violating the eight-person limit." *Oxford House-C v. City of St. Louis*, 77 F.3d 249, 251 (8th Cir. 1996).

---

[3] Applying the panel's decision in retrospect, nearly every single *Oxford House* decision—and there are many—quickly becomes bad law—"[A] new Oxford House operates until it eventually is cited by the municipality for zoning or other local violation, at which time Oxford House begins the local administrative process to obtain a special use permit or variance, or institutes a legal proceeding alleging failure to accommodate under federal law… As a matter of practice, Oxford House, Inc. does not seek prior approval of zoning regulations before moving into a residential neighborhood." *Oxford House, Inc. v. City of Wilmington*, N.C., No. 7:07-CV-61-F, 2010 WL 4484523, at *2 (E.D.N.C. Oct. 28, 2010); see also *Oxford House-A v. City of University City,* 87 F.3d 1022,1023 (8th Cir. 1996)(Noting the same strategy). A reflection on the consequences associated with the decision rendering those cases bad law is worthwhile.

In *Oxford House-C*, the City of St. Louis "consistently said it cannot make an exception to the zoning code unless the Oxford Houses apply to the City's Board of Adjustments for a variance…and the Oxford Houses refuse to apply." *Id.* at 253. In other words, this Court held that regardless of the previous violations, the Oxford Houses' "refusal [was] fatal to [the Oxford Houses'] reasonable accommodation claim [because the] Oxford Houses must give the City a chance to accommodate them through the City's established procedures for adjusting the zoning code." *Id.* (citations omitted). *Oxford House-C* gives applicants one clear rule— comply with the established procedures when you raise your ADA claims.

With the *Audette* decision of this Court, now, when the government relies on its own Ordinance, which includes an after-the-fact permit process, or the public entity allows engagement in some other retroactive process, and the landowner engages in that process, the ADA does not apply. The decision upends the accepted ADA analysis that applies to all other reasonable accommodation claims—burden, necessity, and fundamental alteration.

The decision is also inconsistent with the Eighth Circuit's precedent as identified in *Oxford House-A*. In that case, this Court determined that "the timing of the lawsuit was unreasonable" because the Plaintiff sued *after* being noticed of violation, but "*before* exhausting available, non-futile procedures under the City's zoning ordinances." *Oxford House-A v. City of Univ. City*, 87 F.3d 1022, 1024 (8th Cir. 1996)(emphasis added). In the present case, under the old rule, those available, non-

futile procedures under the City's zoning ordinances would naturally include an application for the after-the-fact conditional use permit. But now, under the "too little, too late" rule, once a zoning violation occurs, those once available procedures become foreclosed to the disabled landowner despite their express presence in the Ordinance, and their historic availability under this Circuit's caselaw.

By the *Audette* decision, this Court has apparently undermined pre-existing principles identified in widely cited cases *Oxford House-A*, and *Oxford House-C*.

**b. The "Too Little, Too Late" Rule's Imposition in the Eighth Circuit Makes the Eighth Circuit an Outlier Nationally**

No other court in the United States has determined the ADA does not afford protections to a landowner first noticed of a land use violation, when that landowner engages in the established procedures for adjusting the zoning code seeking disability accommodation. In *Summers v. City of Fitchburg*, 940 F.3d 133, (1st Cir. 2019), even though the landowner had been noticed of a violation, the First Circuit declined to doom the applicant on sequencing. Instead employed the uniform, historic analysis that "[a]n accommodation is 'reasonable' when it imposes no 'fundamental alteration in the nature of the program' or 'undue financial and administrative burdens' on the defendant." *Id.* (citations omitted); see also *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 578 (2d Cir. 2003)(Second Circuit holding that even though landowner was cited for a land use violations it "affirm[ed] the district court's finding that plaintiffs requested a reasonable accommodation and the City failed to grant it."); see also

*Allentown Victory Church v. City of Allentown, Pennsylvania*, No. 22-2817, 2024 WL 3439772, at *6 (3d Cir. July 17, 2024) (Third Circuit holding that in subsequent litigation—after a landowner received notice of a violation—the landowner could not prove necessity, "[s]o its reasonable accommodation claim fails" but refusing to preclude relief on the basis of the cited violation."); and see *Anderson v. City of Blue Ash*, 798 F.3d 338, 345 (6th Cir. 2015) (Sixth Circuit reversing summary judgment to City on Plaintiff's reasonable accommodation claims despite the fact that Plaintiff, mother to a disabled daughter, was cited, prosecuted, and found guilty for violating ordinances, which Plaintiff maintained were reasonable accommodations for her daughter's disability.); and see *United States v. Vill. of Palatine, Ill.*, 37 F.3d 1230, 1234 (7th Cir. 1994) (Seventh Circuit failing to find violation of ordinance precluded ADA relief, holding that even though Plaintiffs were cited for multiple violations of its rental property licensing requirements and its Life Safety Code, that the "Village must be afforded an opportunity to make such an accommodation pursuant to its own lawful procedures" before Plaintiffs' failure to accommodate claims were ripe.); see also *Ohio House, LLC v. City of Costa Mesa*, 135 F.4th 645, 677 (9th Cir. 2025) (Despite enforcement against a group home for violation of local ordinances, and fines totaling approximately $29,000, the Ninth Circuit did not consider that violations rendered applications "too little, too late" in its evaluation of the rule that "Public agencies have "an 'affirmative duty' ... to reasonably accommodate disabled individuals by modifying administrative rules and policies," including zoning ordinances." *Id.*); and see *Courage*

*to Change Ranches Holding Co. v. El Paso Cnty., Colorado*, 73 F.4th 1175, 1183 (10th Cir. 2023)(After an enforcement file had been opened against disabled party, the Tenth Circuit, citing *Oxford House-C*, 77 F.3d at 253, employed the standard 'reasonable and necessary' accommodation analysis, emphasizing that the Plaintiff needed to give the County the chance to offer the accommodation, rather than outright precluding ADA relief); see also *Sailboat Bend Sober Living, LLC v. City of Fort Lauderdale, Fla.*, 46 F.4th 1268, 1271 (11th Cir. 2022)(Eleventh Circuit employing standard accommodation analysis despite the fact that Plaintiffs had committed " several significant code violations" subject to enforcement actions, rather than precluding ADA relief because the Plaintiff brought claims after a notice of violation.) Rehearing en banc will modify the panel's decision to ensure ADA claims are not prohibited in governmental processes addressing zoning code violations, consistent with other circuit caselaw, and this Court's precedent.

## III. The Decision Breaks with Eighth Circuit Precedent and is Inconsistent with Circuit Caselaw Regarding the Definition of "Meaningful Access" in the Title II Context

The historic, uniform rule in this Court is that a public entity "must make reasonable accommodations where necessary to give 'meaningful access' to programs or benefits; mere 'limited participation' by persons with disabilities is not equivalent to 'meaningful access.'" *Hall v. Higgins*, 77 F.4th 1171, 1181 (8th Cir. 2023), quoting *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999). The present, Eighth Circuit rule might now be summarized as: Latent accommodations, or, accommodations present

only in the text of the Ordinance never actually "proposed" or "offered" to disabled parties, insulate from liability the public entity and relevant officials who failed to actually "offer" the accommodations, simply by virtue of the "accommodation's" presence in the Ordinance's text—a paper shield.

As the panel penned: "The County's Ordinance *proposes an accommodation* for people with mobility disabilities that enables the construction of a walkway to the lake. However, the Audettes never sought the County's permission to construct *this offered accommodation*." *Audette*, at 11. Nowhere else in the federal courts have Ordinances themselves been found to "propose," let alone "offer," an accommodation to a disabled applicant, by virtue of their mere presence on paper, and nothing else. In all other jurisdictions, the accommodation must actually be offered *by the public entity to the disabled person*, to ensure that the disabled applicant has meaningful access.

The decision's hard turn caused both the break in Eighth Circuit precedent, and an inconsistency between this Court, other federal circuits, and the Supreme Court on the definition of "Meaningful Access." According to the Supreme Court, a public entity must actually provide "meaningful access" to purportedly available accommodations. A latent, never-offered accommodation is not enough. See *Alexander v. Choate*, 469 U.S. 287, 301 (1985). (Supreme Court stating that "[t]he benefit itself, of course, cannot be defined in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled; to

assure meaningful access, reasonable accommodations…may have to be made.") It cannot be said that the presence of a described accommodation on paper actually affords the disabled person some accommodation for their disability. But the *Audette* decision now means that the government is insulated from liability even if the government offers less than the Ordinance requires by its own text.

## CONCLUSION

For the foregoing reasons, the petition for a rehearing en banc should be granted.

Dated: August 7, 2026

*/s/Gregory M. Erickson*
Gregory M. Erickson, 276522
Maxwell D. Becker, 0505693
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: erickson@mklaw.com
Email: becker@mklaw.com
*Attorneys for the Appellants*

## CERTIFICATE OF COMPLIANCE

## WITH FED. R. APP. P. 32 (a)(7)

The undersigned certifies that the Brief submitted herein contains 3,899 words and complies with the type/volume limitations of the Federal Rules of Appellate Procedure 32(a)(7). This Brief was prepared using a proportionally spaced typeface of 14-point. The word count is stated in reliance on Microsoft 365, the word processing system used to prepare this Brief.

Dated: August 7, 2026

*/s/Gregory M. Erickson*

Gregory M. Erickson, 276522
Maxwell D. Becker, 0505693
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: erickson@mklaw.com
Email: becker@mklaw.com
*Attorneys for the Appellants*

## **Use of AI Technology Certification**

Counsel attests that appropriate steps to verify whether AI technology systems have been used in preparation of this submission and if so, appropriate steps were taken, to the best of counsel's ability, to verify the truthfulness and accuracy of facts and citations of that content before submission to this Court. This submission did rely upon the ordinary or customary research tools and other available research sources such as, but not limited to, Westlaw or Lexis.

Dated: August 7, 2026

*/s/Gregory M. Erickson*
Gregory M. Erickson, 276522
Maxwell D. Becker, 0505693
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: erickson@mklaw.com
Email: becker@mklaw.com
*Attorneys for the Appellants*

## CERTIFICATE OF SERVICE

## FOR DOCUMENTS FILED USING CM/ECF

### Certificate of Service When All Case Participants Are CM/ECF Participants

I hereby certify that on August 7, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/Gregory M. Erickson